HORNING v. HORNING.

1. DIVORCE — SEPARATE MAINTENANCE — HUSBAND AND WIFE — STATUTES.

A bill of complaint in the form of a bill for divorce, not referring to any other statute, with a prayer for separate maintenance and general relief merely, is not a proceeding to provide the wife with property and maintenance under 3 Comp. Laws, § 8686.

2. SAME — APPEAL AND ERROR — TRIAL COURT — WORDS AND PHRASES—STATUTES.

Act No. 324, Pub. Acts 1907, permitting the entry of a decree for divorce in a suit for separate maintenance, by the court hearing the evidence, authorizes the Supreme Court, on appeal, to enter the decree of divorce, since such appeals are heard *de novo*.

3. SAME—SUPREME COURT.

On grounds of public policy, a divorce absolute is granted to the complainant, on appeal by defendant, from a decree providing for separate maintenance.

4. SAME—ALIMONY—AMOUNT.

Out of real property in which defendant has an equity of about $1,000, an award of alimony of $700, payable $50 per month, is *held* to be sufficient.

Appeal from Kent; Chester, J., presiding. Submitted April 14, 1910. (Docket No. 24.) Decided July 14, 1910.

Bill by Anna M. Horning against Edwin T. Horning for a decree of separate maintenance. From a decree for complainant, defendant appeals. Reversed, and decree of absolute divorce granted.

*Francis A. Stace* (*Thomas P. Bradfield*, of counsel), for complainant.

*William E. Grove*, for defendant.

McAlvay, J.   From a decree granted to complainant against defendant decreeing a separation for life and ordering separate maintenance by him, defendant has appealed to this court.   It appears from defendant's answer that complainant first filed a bill of complaint against him in the Kent circuit court, in chancery, praying for a divorce from the bonds of matrimony, on March 14, 1907, which bill defendant answered, and an issue was joined. During the pendency of that suit, and before any hearing, negotiations were had between the parties relative to settling the property interests.   No satisfactory settlement could be reached, and complainant then voluntarily dismissed her bill of complaint, and on or about January 11, 1908, filed the bill of complaint in this suit in the same court.

The bills and answers in both suits are printed in the record, and may be said to be identical, except as to the relief prayed for in this bill of complaint, and a statement in this answer showing the former suit, and alleging that it was voluntarily dismissed after a failure to induce him to transfer nearly all of his property to her, free from incumbrances.

Complainant, on the hearing below, insisted and still contends in this court that the case before us was not a suit for divorce, but a proceeding under section 8686, 3 Comp. Laws, "to provide wives with property and maintenance, etc.," being Act No. 243, Pub. Acts 1889.   The question was properly disposed of by the trial court against the contention of complainant, as follows:

"The bill of complaint in this case is in form and substantially in every particular a bill for absolute divorce, except the prayer which is for an allowance for separate maintenance, coupled with a prayer for general relief."

Nothing in this bill of complaint indicates that the pleader at the time it was drawn had in contemplation the act of 1889.   In form and substance it conforms with all the statutory requirements for a bill for divorce, and not

with the petition required by the act of 1889. The prayer for separate maintenance is not different from such a prayer in ordinary cases of bills filed for separation, which, in fact, is a prayer for divorce from bed and board. In the instant case the decree is for separate maintenance for life. It is a decree of separation formerly called "*a mensa et thoro.*" Such a decree is recognized as a decree of divorce. 9 Am. & Eng. Enc. Law (2d Ed.), p. 851.

The parties to this suit lived happily together for about 12 years. She charges that he then began to treat her with extreme cruelty, went away from her, and was unfaithful. Defendant denies these charges, and claims that the change in their relations was in fact caused by a drug habit which complainant acquired by using a preparation of cocaine and morphine, and continued without his knowledge for a long time, and which he with her consent took steps to cure; but during the time of her treatment it was necessary to watch her closely and care for her, which he claims embittered her against him. The proofs tend to show that from the use of these drugs she had become mentally and physically weakened. Upon this claim of defendant there is a disagreement between these parties. There is, however, no dispute but that up to the time that the relations between them became strained, defendant furnished support to his family to the extent of his ability and earning capacity. He acquired a homestead and some other property, against which there are incumbrances, which must be taken care of in order to save anything. It appears that the equity in all the property amounts to about $1,000. It would be of no benefit to present and discuss the evidence in the case. It has all been examined and considered. We are not inclined to disturb the conclusion of the court in finding that the charge of cruelty against defendant was sustained by the proofs. There is also abundant proof to show that these parties have become so estranged that it will be impossible for them to resume their relations as husband and

wife.  Both of them testify that such a thing is impossible,

Two questions remain to be considered, namely:

(1) Whether the court, in its discretion, should grant a decree from the bonds of matrimony; and
(2) The allowance which should be granted to complainant.

Complainant has not appealed from the decree which was granted upon the theory that the bill of complaint was one for a divorce, and not a proceeding under the statute of 1889, of which holding we have indicated our approval.  Complainant, however, does contend that, under the statute, this court cannot grant a decree from the bonds of matrimony.

It is insisted that the amendment of 1907 (Act No. 324, Pub. Acts 1907) confers such power only upon the trial court, by the words:

"Unless the court hearing the evidence shall deem it for the best interests of the parties to grant a divorce from the bonds of matrimony, and in that event the court may grant such divorce."

All chancery causes are heard *de novo* in this court, upon the same evidence presented in the court below: This court, then, is "the court hearing the evidence" in cases of this kind, with jurisdiction to exercise its judicial discretion upon the question under discussion.  The construction claimed would be one of implication, and contrary to the well-settled policy of this State, as to the authority vested in this court upon chancery appeals.

This section, 8623, 3 Comp. Laws, has been amended twice.  Originally it provided that a divorce from the bonds of matrimony might be decreed for either of the causes mentioned in the preceding section (for extreme cruelty, utter desertion for two years, and for wanton and cruel neglect and refusal to support, by the husband, when of sufficient ability to do so), "whenever, in the opinion of the court, the circumstances of the case shall be such that

it will be discreet and proper so to do). The amendment of 1905 (Act No. 135, Pub. Acts 1905), added:

" But no divorce from the bonds of matrimony for either of the causes mentioned in the preceding section shall be entered in any case where the same is not asked for by the complainant in the bill of complaint filed therein, or by the defendant on a cross-bill."

The addition to this by the amendment of 1907 is already quoted above. In relying upon this section in support of the decree granted, complainant has abandoned the independent charge of the unfaithfulness of defendant. Such cause for divorce is not included in the preceding section, but only those above enumerated.

We consider that this record presents a case for the exercise of the discretion conferred by the statute to grant complainant a divorce from the bonds of matrimony, and deem it for the best interests of the parties so to do "on grounds of public policy, to prevent the mischiefs arising from turning out into the world in enforced celibacy persons who are neither married nor unmarried." *Burlage* v. *Burlage*, 65 Mich., at page 627 (32 N. W. 867). Also upon the ground, that by so doing a more satisfactory and certain provision may be made for complainant, in making an allowance to her of her proportionate share of the property of defendant. We will therefore so change the decree as to make the divorce an absolute one from the bonds of matrimony.

It appears that this property is incumbered; that interest, taxes, and repairs must be met by defendant. The equity appears to be worth not more than $800 to $1,000. Complainant will be allowed the sum of $700 as permanent alimony, being $100 less than defendant's brief indicates as satisfactory, to be paid in monthly intallments of not less than $50 each, provided that she will release to defendant, from time to time, all of her claim, title, and interest in and to each parcel of the real estate, if he has opportunity to sell and dispose of the same, whenever he so requests, and will pay to her the proportionate part

which the equity in such parcel bears to the unpaid amount of the alimony at that time, when considered with the value of the entire equity in all the parcels then remaining unsold. She will also be awarded all of the household furniture in her possession.

The decree of the circuit court will be reversed and set aside, with costs of both courts to complainant, and a decree will be entered in this court in accordance with this opinion.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.